UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| **RALPH HART,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Case No. 09-CV-2125** |
| ) | |
| **WAL-MART STORES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on a Motion for Summary Judgment and Sanctions (#29) filed by Defendant, Wal-Mart Stores, Inc (Wal-Mart). This court has carefully reviewed the arguments of the parties and the documents provided. Following this careful and thorough review, this court concludes that Wal-Mart is entitled to summary judgment. This court concludes, however, that sanctions are not warranted. Accordingly, Wal-Mart's Motion for Summary Judgment and Sanctions (#29) is GRANTED in part and DENIED in part.

## FACTS[1]

Plaintiff, Ralph Hart, is African American and believes that employees at the Wal-Mart Store in Mattoon, Illinois (Mattoon Wal-Mart) treat Caucasian customers better than African American customers and discriminate against African American customers based upon their race. At his deposition, Plaintiff was given the opportunity to provide all of the evidence he has to support this belief. Plaintiff recounted occasions where he witnessed a greeter at the Mattoon Wal-Mart ask African American customers to show their receipt and did not ask Caucasian customers to show a

---

[1] The facts are taken from Wal-Mart's Statement of Undisputed Material Facts, Plaintiff's Statement of Additional Material Facts, and the supporting exhibits provided by the parties, including excerpts from deposition transcripts. This court has only included facts which are based upon admissible evidence and which are material to the claims made by Plaintiff in this case.

receipt. He acknowledged, however, that there were instances when he was not asked to show a receipt and also acknowledged that he could not say that Caucasian customers were never asked to show receipts. He also described an occasion where he was waiting for service at the deli counter at the Mattoon Wal-Mart and Milly Rowe, a Wal-Mart employee, started to wait on a Caucasian customer when he was actually next in line. Plaintiff testified that the Caucasian customer advised Rowe that Plaintiff was next in line and Rowe then waited on him "[r]eluctantly."

On April 16, 2005, Plaintiff went to the Mattoon Wal-Mart with his friend, Patrick Morris, and his son, Hart Hart, who was 11 years old at that time. Plaintiff testified that Rowe, who was working as a greeter, greeted other customers entering the store but looked at them with "disgust." Plaintiff purchased a lawn mower and other items. Plaintiff testified that he had the lawn mower in a cart and, as he was leaving the store, Rowe asked him if he had paid for the mower and asked to see his receipt. Plaintiff testified he told her that he had paid for the lawn mower. Plaintiff also testified that Rowe had not asked other customers ahead of him to see their receipts so, as to her request to see his receipt, he told her "no" and walked to the parking lot. Rowe testified that her position of door greeter required "looking at all receipts going out the door." It is undisputed that Wal-Mart conducts receipt checks to deter and prevent shoplifting. Rowe testified that, when Plaintiff refused to show her a receipt, she told Jacob Brown and Kevin Elliott, two Garden Center Sales Associates, that a customer would not show her his receipt from his merchandise.

Plaintiff testified that Brown and Elliott "ran" up to them and grabbed his cart. They asked to see his receipt. Plaintiff refused to show them his receipt. Brown testified that Plaintiff responded that he did not have one. Plaintiff's son testified that he remembered his dad saying that he did not have one. Plaintiff testified that he told Brown and Elliott that he felt he was being singled out because he was black because the greeter did not ask any of the other customers for their

receipt. Plaintiff testified that one of them said, "if you can't show us a fucking receipt, you can't take our fucking stuff." Plaintiff testified that he said to "back off or else" and then told either Brown or Elliott "if he touched my stuff again I was going to break his fucking face." Brown and Elliott went to get Tim Rappe, an assistant manager at the Mattoon Wal-Mart, who was operating a fork-lift nearby. Rappe came over and asked Plaintiff for his receipt. Plaintiff testified that "I explained to [Rappe] what had happened and how I felt that it was racial profiling to single me out and not the others, and then he responded sharply that he didn't have time for this crap or shit, whichever one it was, and he needed me to show him the receipt or he was going to call the police." Plaintiff testified "I told him to call the police because that would be good if he called the police." Plaintiff also testified that Rappe told him he was not allowed back at the store. Plaintiff testified "I told him he didn't own the store." Plaintiff testified that he called Rappe a "[p]unk ass bitch" and "told him to fuck off." Plaintiff testified that he and Rappe were both shouting.

The evidence shows that the police were not called and, even though Plaintiff did not show Rowe, Brown, Elliott or Rappe his receipt, Plaintiff left with the lawn mower in Morris' truck. Morris testified that they got about three miles away and Plaintiff decided he did not want the merchandise and was taking it back. Morris testified that he took Plaintiff back to the Mattoon Wal-Mart. Plaintiff testified that he entered the store and returned the lawn mower and other merchandise. Plaintiff testified that he showed his receipt to return the merchandise. Plaintiff testified that nobody told him to return the stuff. At his deposition, Plaintiff was asked "did anybody tell you that you had to return the goods?" He responded, "Just me." Plaintiff testified that, when he came back to return the merchandise, he talked to the manager of the Mattoon Wal-Mart, David Sauerwein. Plaintiff testified that Sauerwein said he was not barred from the store. Rappe confirmed that the only way to ban a customer from the store was to fill out a "trespass letter,"

which was not done in Plaintiff's case. Rappe testified that, without the trespass letter, there is no way to enforce a ban.

Plaintiff testified that he did not shop at the Mattoon Wal-Mart until the end of 2007 or beginning of 2008 "[b]ecause I was still upset." Plaintiff testified that he could have returned to the store if he wanted to, he "just chose not to because of what had happened." Plaintiff testified that, since then, he has shopped at the Mattoon Wal-Mart without any incident or problems. Plaintiff testified that, subsequent to 2005, he has been able to enter the store and make purchases without any problems. Plaintiff specifically testified that no employee at any Wal-Mart store, including the Mattoon Wal-Mart, has ever prohibited him from entering a store or ever prohibited him from making a purchase.

## PROCEDURAL HISTORY

On April 13, 2009, Plaintiff, through his counsel Ruth E. Wyman of the Robert G. Kirchner Law Office, filed his complaint against Wal-Mart in the circuit court of Coles County. Plaintiff alleged that Wal-Mart violated 42 U.S.C. § 1981 in various ways, including by causing Plaintiff to return goods to the store. On May 28, 2009, Wal-Mart filed a Notice of Removal (#1) and removed the case to this court, stating that Plaintiff's Complaint arises under federal law as it alleges that Plaintiff seeks redress pursuant to 42 U.S.C. § 1981.

On March 12, 2010, Wal-Mart filed its Motion for Summary Judgment and Sanctions (#29). Wal-Mart argued that it is entitled to summary judgment on Plaintiff's Complaint because Plaintiff cannot establish that the alleged discrimination concerned the making and/or enforcing of a contract and, additionally, because Plaintiff cannot show that Wal-Mart had the intent to discriminate on the basis of race. Wal-Mart also argued that it was entitled to an award of sanctions from Plaintiff's attorney pursuant to 28 U.S.C. § 1927. Wal-Mart argued that "Plaintiff's counsel should have been

aware that Plaintiff's claims were no longer factually or legally viable after Plaintiff's deposition, when Plaintiff admitted that he (1) has never been denied entrance to the Mattoon Wal-Mart Store (or any other Wal-Mart Store), (2) has never been prevented from making a purchase; and (3) voluntarily decided to return his purchased goods (and was allowed to do so) on the day at issue in this Lawsuit." Wal-Mart argued that these admissions made Plaintiff's § 1981 claim not viable, and Plaintiff's counsel should have dismissed the case.

On March 31, 2010, Plaintiff, through counsel, filed his Response to Wal-Mart's Motion for Summary Judgment (#32). Plaintiff argued that Wal-Mart's employees threatened to take his merchandise and threatened to call the police, causing him to return the merchandise. Plaintiff therefore argued that the actions of Wal-Mart's employees interfered with his right to equal enjoyment of a contractual relationship. Plaintiff also argued, throughout his Response, that he was banned from the store. He argued that, because of this ban, he did not return to the Mattoon Wal-Mart until either the end of 2007 or beginning of 2008. Plaintiff's counsel did not respond to Wal-Mart's request for sanctions.

On April 14, 2010, Wal-Mart filed its Reply (#34). Wal-Mart argued that, in his Response, Plaintiff has attempted to "avoid summary judgment by backpedaling off his clear admissions that he voluntarily returned his purchased goods and that he was not barred from the Store."

## ANALYSIS

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district

court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).

However, the "mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only proper, but mandated. See Celotex, 477 U.S. at 322; Jones v. Indy 104, L.L.C., 2010 WL 2270931, at *3 (S.D. Ind. 2010).

## PLAINTIFF'S CLAIM

Section 1981 states, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The United States Supreme Court has interpreted § 1981 as "providing a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing

of contracts." Humphries v. CBOCS West, Inc., 474 F.3d 387, 393 (7th Cir. 2007), aff'd 553 U.S. 442 (2008), citing Runyon v. McCrary, 427 U.S. 160 (1976); see also Williams v. S. Ill. Riverboat/Casino Cruises, Inc., 2008 WL 1776461, at *5 (S.D. Ill. 2008). Litigation involving § 1981 most commonly involves the right to make and enforce contracts of employment but the statute also protects citizens' rights to enter into retail contracts. See Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996); Jones, 2010 WL 2270931, at *3; see also Hill v. Shell Oil Co., 78 F. Supp. 2d 764, 776 (N.D. Ill. 1999).

To establish a prima facie claim of such discrimination regarding retail contracts, a plaintiff must show that (1) he is a member if a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006). The Seventh Circuit has made clear that, in order to prevail in a claim under § 1981 regarding a retail contract, the plaintiff must show that he was denied his right to contract or purchase personal property. See Bagley v. Ameritech Corp., 220 F.3d 518, 521-22 (7th Cir. 2000); Morris, 89 F.3d at 414-15.

In Bagley, the plaintiff, a black man, went to an Ameritech retail store to purchase a cordless telephone. The plaintiff asked a sales clerk for assistance and the sales clerk asked the assistant sales manager if the phone was still in stock. Bagley, 220 F.3d at 519-20. The assistant sales manager loudly responded that she would not serve the plaintiff. She then gave the plaintiff "the finger" and handed the sales clerk a brochure about the phone. Bagley, 220 F.3d at 520. The plaintiff was offended, thinking the assistant sales manager treated him in this manner because of his race, and left the store. The plaintiff later returned to get the sales clerk's name to use him as a witness. The sales clerk provided his name and then asked the plaintiff "if he needed further assistance in making a purchase." Bagley, 220 F.3d at 520. The plaintiff declined the sales clerk's offer. According to

7

the plaintiff, before he left, the assistant sales manager again gave him "the finger." Bagley, 220 F.3d at 520.

The district court dismissed the case on summary judgment, finding that the plaintiff never really tried to enter into a contract and thus could not have been deprived of his rights to contract or purchase personal property. Bagley, 220 F.3d at 519. The district court found that the plaintiff chose not to enter the contract since: (1) he was allowed into the store; (2) he received assistance from the sales clerk: (3) he immediately left the store after hearing the comment without attempting to consummate the transaction with the sales clerk or anyone else; (4) no one told him to leave; (5) the sales clerk asked him if he needed assistance when he returned; (6) the assistant sales manager handed the sales clerk the brochure about the phone despite her comments: and (7) the plaintiff had made a number of past purchases at the store and had twice been helped by the assistant sales manager. Bagley, 220 F.3d at 521. The Seventh Circuit affirmed, finding that, because Ameritech was not responsible for terminating the transaction, it did not violate § 1981. Bagley, 220 F.3d at 522.

In Morris, the plaintiffs were two black patrons at an Office Max store, who had both shopped at the store on prior occasions. The store's assistant manager called the police and reported two black males purportedly acting suspiciously. When police officers arrived in response to the call, the plaintiffs, who were the only two black men in the store at the time, showed identification and answered questions posed by the officers. The police officers then apologized and left. Morris, 89 F.3d at 412. The plaintiffs filed a lawsuit and the district court granted summary judgment for Office Max. The court "found that the plaintiffs failed to produce any evidence to suggest that Office Max interfered with their right to make further purchases or to enter into a retail contract." Morris, 89 F.3d at 412.

The Seventh Circuit affirmed, stating that the plaintiffs "cannot point to specific facts showing that Office Max deprived them of any of the enumerated rights in § 1981 and, specifically, the right to make and enforce a contract." Morris, 89 F.3d at 414. The court stated that the plaintiffs "were denied neither admittance nor service, nor were they asked to leave the store." Morris, 89 F.3d at 414. The Seventh Circuit rejected the plaintiffs' argument that "the store discouraged and dissuaded them from making the purchase," noting that the plaintiffs failed to demonstrate that they would have attempted to make a purchase even if they had not been approached by the police. Morris, 89 F.3d at 414. The court stated that, because the plaintiffs did not attempt to make any further purchases, they "never sought to enter into a contractual relationship with Office Max." Morris, 89 F.3d at 414. The Seventh Circuit stated that a "claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." Morris, 89 F.3d at 414-15.

Subsequently, in Maxie v. Wal-Mart Store, 2009 WL 1766686 (N.D. Ind. 2009), the district court dismissed a suit wherein the pro se plaintiff stated that he was suing Wal-Mart for "harassing and humiliating" him when an undercover store security officer and a Wal-Mart store employee asked to see his receipt and pulled out all the items he and his companion purchased in front of the store. The plaintiff alleged that the Wal-Mart employee "was watching us as if we stole something." The plaintiff alleged that they were singled out because of race. Maxie, 2009 WL 1766686, at *1. The district court stated:

> In this case, Maxie has only made allegations satisfying the first and second requirements [of a claim under 42 U.S.C. § 1981], but he has not alleged that Wal-Mart's discrimination concerned the making or enforcement of a contract. Maxie's transaction was complete when

9

> the security guard stopped him, and Maxie was allowed to keep the items he purchased. In short, Maxie's complaint does not state a claim under § 1981 because nothing in the complaint suggests Wal-Mart discriminated against him *with respect to making and enforcing a contract*.

Maxie, 2009 WL 1766686, at *4 (emphasis in original).

Moreover, in Range v. Wal-Mart Supercenter, 2008 WL 1701870 (N.D. Ind. 2008), the district court dismissed a similar case. In Range, the pro se plaintiffs, an African American husband and wife, alleged that they refused to show a receipt for their purchases and Wal-Mart employees and a security guard took control of the items they had just purchased. The plaintiffs' complaint was unclear regarding whether the store reimbursed them for the items. The plaintiffs alleged that the husband is often stopped and asked for receipts when leaving Wal-Mart, while other customers are not stopped. Range, 2008 WL 1701870, at *1. The district court concluded that the plaintiffs' complaint did not state a cause of action under § 1981. The court stated:

> the alleged discrimination in this case–asking plaintiffs for a receipt as they were leaving the store after making a purchase–did not involve the making or enforcing of a contract. Rather, the alleged discrimination occurred after plaintiffs had successfully made their purchases.

Range, 2008 WL 1701870, at *4. The court noted that "[l]arge stores such as Wal-Mart often conduct such receipt checks, not as some sort of additional condition to the sale, but in an effort to foil shoplifters." Range, 2008 WL 1701870, at *4 n.1. The district court concluded that, thus, "the alleged discrimination was not part of the 'contract' or sale, and cannot be the basis for liability

under § 1981." Range, 2008 WL 1701870, at *4.

In this case, there is no dispute that Plaintiff completed the purchase of the lawn mower and other items and was leaving the store when he was asked for his receipt. The record also shows that Plaintiff did not show his receipt, but still left the store with the lawn mower and other merchandise. The deposition testimony showed that Plaintiff decided to return the items to the store and was allowed to do so. Plaintiff also testified that he was not barred from the store, but voluntarily decided not to shop there for a while. He testified that no employee at any Wal-Mart store, including the Mattoon Wal-Mart, has ever prohibited him from entering a store or ever prohibited him from making a purchase. Based upon the applicable precedent from the Seventh Circuit, and persuasive authority from district courts in the Seventh Circuit, this court concludes that Plaintiff cannot establish an essential element of his case under § 1981, that the alleged discrimination concerned the making or enforcing of a contract. Therefore, Wal-Mart is entitled to summary judgment on Plaintiff's claim. See Bagley, 220 F.3d at 522; Morris, 89 F.3d at 414-15; Maxie, 2009 WL 1766686, at *4; Range, 2008 WL 1701870, at *4. Because of this conclusion, there is no need to consider Wal-Mart's additional argument that Plaintiff cannot show that Wal-Mart had the intent to discriminate on the basis of race.

This court notes that, in an effort to avoid summary judgment, Plaintiff has argued that the actions of Wal-Mart employees "caused" him to return the merchandise and that he was "banned" from the store.[2] However, Plaintiff testified that no one told him to return the items to the store, it was "[j]ust me." Plaintiff also testified that he was not barred from the store. Plaintiff cannot

---

[2] In arguing that he was banned from the store, Plaintiff has relied on Elliott's deposition testimony that Rappe told him Plaintiff was banned from the store. However, this testimony is inadmissible hearsay and directly contradicts Plaintiff's own clear, unequivocal testimony that he was not barred from the Mattoon Wal-Mart.

circumvent summary judgment by introducing facts and arguments that are contradicted by his deposition testimony. See Pourghoraishi, 449 F.3d at 759 (later affidavit or declaration which conflicts with a plaintiff's sworn testimony is to be disregarded); Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998) (a party cannot prevail on a motion for summary judgment by "submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony").

## SANCTIONS

The only real issue in this case is whether sanctions should be awarded to Wal-Mart. Wal-Mart has requested sanctions pursuant to 28 U.S.C. § 1927. This statutes provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions are available under § 1927 when "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, [then] the conduct is objectively unreasonable and vexatious." Moore v. Vital Prods., Inc., 2009 WL 275475, at *18 (N.D. Ill. 2009), quoting Dal Pozzo v. Basic Mach. Co., 463 F.3d 609, 614 (7th Cir. 2006). Unlike sanctions under Rule 11 of the Federal Rules of Civil Procedure, sanctions under § 1927 are available only against an attorney, not the client. Moore, 2009 WL 275475, at *18.

Plaintiff's attorney did not respond to Wal-mart's request for sanctions, and this court believes that Wal-Mart has made a persuasive argument in support of awarding sanctions in this case. As noted previously, Plaintiff's testimony at his deposition was clear and unequivocal that he decided to return the merchandise he purchased, including the lawn mower, on April 16, 2005. Plaintiff's testimony was also clear and unequivocal that he was not barred from the Mattoon Wal-

Mart and, after a period where he did not shop there by his own choice, he has shopped there with no problems. This testimony doomed Plaintiff's claims under 42 U.S.C. § 1981. Instead of recognizing this, Plaintiff's attorney carried on and, in response to Wal-Mart's Motion for Summary Judgment, argued that Wal-Mart "caused" Plaintiff to return merchandise on April 16, 2005, and was banned from the store on that date. These arguments were completely contrary to Plaintiff's own deposition testimony.

However, in assessing whether sanctions should be awarded under § 1927, a court must proceed cautiously. Moore, 2009 WL 275475, at *18. The Seventh Circuit has stated that § 1927 is clearly punitive and thus must be construed strictly. Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 226 (7th Cir. 1984). The purpose of § 1927 is to penalize attorneys who engage in dilatory conduct; thus, to be liable under § 1927, counsel must have engaged in "serious and studied disregard for the orderly process of justice." Knorr Brake, 738 F.2d at 227, quoting Overnite Transp. Co. v. Chicago Indus. Tire Co., 697 F.2d 789, 795 (7th Cir. 1983). The term "vexatious" in § 1927 requires "either subjective or objective bad faith" to warrant sanctions. Kotsilieris v. Chalmers, 966 F.2d 1181, 1184 (7th Cir. 1992). Therefore, sanctions are not warranted under § 1927 if a litigant acts in good faith. Hoglund v. Signature Mgmt. Group, Inc., 2009 WL 1269258, at *4 (N.D. Ill. 2009). After careful consideration, this court concludes that, while Plaintiff's arguments were unsuccessful, this court does not believe that Plaintiff's counsel presented the arguments in bad faith.[3] See Hoglund, 2009 WL 1269258, at *4. This court further concludes that Wal-Mart has not shown that Plaintiff's discrimination claims "were so utterly bereft of any basis at the outset to warrant a finding that [P]laintiff's counsel violated Section 1927." See Moore, 2009 WL 275475,

---

[3] This court notes, however, that it is hard to justify Plaintiff's counsel's use of arguments that directly contradicted Plaintiff's own deposition testimony.

13

at *18.  Therefore, Wal-Mart's request for sanctions is DENIED.

      IT IS THEREFORE ORDERED THAT:

      (1) Wal-Mart's Motion for Summary Judgment and Sanctions (#29) is GRANTED in part and DENIED in part.  Wal-Mart's request for summary judgment is granted and judgment is entered in favor of Wal-Mart and against Plaintiff.  Wal-Mart's request for sanctions against Plaintiff is DENIED.

      (2) This case is terminated.  Accordingly, the final pretrial conference scheduled on September 10, 2010, at 11:00 a.m., and the jury trial scheduled on September 27, 2010, at 9:00 a.m., are hereby VACATED.

      ENTERED this 1st day of July, 2010.

      s/MICHAEL P. McCUSKEY
      CHIEF U.S. DISTRICT JUDGE